Albert M. Slater and Irene Slater v. Commissioner.
Slater v. Commissioner
Docket No. 58937.
United States Tax Court
T.C. Memo 1959-125; 1959 Tax Ct. Memo LEXIS 123; 18 T.C.M. (CCH) 557; T.C.M. (RIA) 59125; June 16, 1959
*123 George B. Lourie, Esq., for the petitioners. Raymond T. Mahon, Esq., for the respondent. KERN
Memorandum Findings of Fact and Opinion Respondent determined a deficiency in the Federal income tax of petitioners for the year 1950 in the amount of $18,837.37. The greater part of that deficiency and the only part here in issue results from respondent's determination that the fair market value of an apartment hotel received by petitioner Albert in the liquidation of a corporation wholly owned by him was $1,024,500. This property was sold by Albert during the taxable year for $1,000,000. Petitioners contend that the fair market value of the property when acquired in liquidation was $1,100,000. In their return petitioners reported a long-term capital gain resulting from such acquisition in the amount of $354,976.72, of which 50 per cent or $177,488.36 was returned as taxable income, and reported a short-term capital loss resulting from the sale of the property in the amount of $98,361.79, which they deducted in full from the long-term capital gain returned in the amount of $177,488.36, resulting in a net taxable gain of $79,126.57. Respondent, by reason of his determination *124 that the fair market value of the property at the time of its acquisition by Albert was $1,024,500, computed 50 per cent of the long-term capital gain to be $139,738.36, the short-term capital loss to be $23,382.09, and the net taxable gain to be $116,356.27. Findings of Fact The stipulation of facts filed by the parties is incorporated herein by this reference, together with the exhibits attached thereto. Petitioners, who are husband and wife, reside in Massachusetts and filed a joint Federal income tax return for the year 1950 with the then collector of internal revenue for the district of Massachusetts. Petitioner Albert will be sometimes referred to herein as the petitioner. For many years petitioner has been in the real estate business and has owned and operated several apartment-house properties. He has served as president of the Boston Apartment House Owners Association, as a director of the Middlesex Apartment House Association, as a director of the Boston Real Estate Exchange, and in 1946 and 1947 as a member of the Advisory Board on Federal Rent Control. In the taxable year petitioner was a salaried employee of the Slater Glasser Realty Corporation, of Modern Manor, *125 Inc., and of Albert M. Slater, Inc., in connection with which employments petitioner managed several apartment buildings. On or about February 1, 1948, petitioner organized a corporation known as The Riverside Apartment Hotel, Inc., for the purpose of acquiring title to two buildings adjacent to each other, located in Cambridge, Massachusetts, which as a unit were know as The Riverside Apartment Hotel, together with the furnishings therein. Petitioner owned all of the stock of the corporation. The total cost basis to the corporation of the property acquired was $874,693.93. There was a first mortgage on each of these buildings. As of September 9, 1949, the aggregate amount due on these two first mortgages was $427,500. In connection with the acquisition by the corporation of these properties, the seller took back a second mortgage covering a part of the purchase price in the principal amount of $293,949.79. At the time of the acquisition of these properties by the corporation the annual gross rentals of The Riverside Apartment Hotel amounted to $146,448. On May 1, 1950, its annual gross rentals amounted to $229,334. There had been considerable difficulty between the former owner *126 of The Riverside Apartment Hotel and its tenants because of this owner's failure to comply with the Federal Rent Control Law. At the time petitioner's corporation acquired the apartment hotel some 67 suits had been filed by tenants against the owner alleging violations of the Rent Control Act, and a part of the purchase price paid by petitioner's corporation was held in escrow pending the outcome of these suits. A short time after petitioner's corporation acquired these properties petitioner was informed that under an amendment or clarification of the Rent Control Law The Riverside Apartment Hotel might be excluded from rent control as a hotel instead of being subject to the Federal Rent Control Law as an apartment house. Accordingly, petitioner caused an action for declaratory judgment to be brought in the United States District Court for the District of Massachusetts to determine this question, predicating jurisdiction of that Court upon threatened suits against the landlord by several of the tenants for receiving excessive rentals in violation of the Housing and Rental Act of 1947. During the years 1948, 1949, and 1950 the tenants of The Riverside Apartment Hotel, Inc., were *127 organized into a Tenants' Committee. Among its activities, this committee caused to be published a mimeographed letter called "Tenants' News." The principal purposes of the committee were to prevent any rent increases except those allowed by the Rent Control Act, and to dispute petitioner's claim that "some legal basis exists for Riverside to be decontrolled." Tenants were urged to write to public officials and were urged to attend the trial of the action for declaratory judgment in the United States District Court. This action was tried before Federal Judge Charles E. Wyzanski on November 8 and 9, 1948, and a number of the tenants were present in the courtroom during the trial. On November 9th Judge Wyzanski entered his opinion in favor of The Riverside Apartment Hotel, Inc., determining that for rent control purposes this corporation was entitled to a declaratory judgment that it was not subject to the Rent Control Law. Shortly thereafter petitioner discovered that there was a plan on the part of the Tenants' Committee to picket The Riverside Apartment Hotel on Saturday November 20, 1948, in protest against the opinion rendered in the declaratory judgment proceeding, and thereupon *128 caused a petitioner to be filed in the Middlesex Superior Court for the purpose of enjoining such picketing. After hearing, an injunction was issued and the threatened picketing was restrained. Shortly after these court actions acts of vandalism were committed upon the property of petitioner's corporation. The furniture in the lobby was cut up; the telephone system was put out of order; and the elevator ropes were cut. The attitude of the tenants of The Riverside Apartment Hotel, Inc., was antagonistic to the management policies of petitioner. During 1948 and 1949 petitioner consulted a physician because of tiredness and nervousness. The physician's diagnosis was "nervous fatigue with beginning elevation of blood pressure." The physician recommended that petitioner take a vacation and that he should not persist in his "heavy schedule of hours and nervous tension." He also prescribed nerve medications to help petitioner. One of the things that contributed to petitioner's nervous fatigue was his recurrent difficulty with the tenants of The Riverside Apartment Hotel. In September 1949 petitioner received an offer to purchase The Riverside Apartment Hotel from a person owning a large *129 number of apartments and other real estate located in Boston. The gross price offered was $1,100,000 to be paid by the assumption of the existing mortgages, the execution of a third mortgage in the principal amount of $293,000 payable in 10 years at 4 per cent interest, and the payment of $100,000 cash. In December 1949 petitioner received an oral offer to purchase The Riverside Apartment Hotel from another real estate operator. The price offered was again $1,100,000, payable by the assumption of the existing mortgages, the execution of a third mortgage in the principal amount of $245,000 payable in 5 years at 3 1/2 per cent interest, and the payment of $150,000 cash. Petitioner refused both of these offers. At some time shortly prior to February 2, 1950, petitioner began the negotiating of a sale of The Riverside Apartment Hotel to the Massachusetts Institute of Technology. On that date petitioner received from the treasurer of the Massachusetts Institute of Technology the following letter: "Following up our visit of yesterday, I am writing to advise that at a meeting of the Executive Committee of the Corporation of the Massachusetts Institute of Technology, held in Boston at *130 1:00 P.M. today, a quorum being present voting, it was voted to buy the property known as The Riverside Apartment Hotel, Memorial Drive at the price already agreed upon by you of $1,000,000. - net to you. "This proposal according to my understanding includes the real property together with all furnishings, refrigerators, gas stoves and other equipment described by you yesterday on the occasion of our visit, as belonging to you. "Upon receiving your acknowledgment, it will be entirely in order for Mr. Nile's office to prepare the usual purchase and sale agreement and the other details can be carried through at the convenience of both parties. "I would like to say that I am very much pleased with our visit on the premises yesterday and appreciate the courtesies by you and in giving us full information and full opportunity for inspection." On the same date petitioner noted his acceptance of the proposal at the bottom of this letter as follows: "I have carefully read the above letter and it is in entire accord with my understanding. Your proposal is herewith accepted." It was understood between petitioner and the Massachusetts Institute of Technology that the excess of the *131 price of $1,000,000 over the principal amounts of the existing mortgages would be paid to petitioner in cash. On February 10, 1950, the Riverside Apartment Hotel, Inc., was liquidated and all of its property distributed to petitioner as its sole shareholder. On March 3, 1950, a formal agreement by the petitioner and the Massachusetts Institute of Technology was executed calling for the purchase and sale at the net price of $1,000,000 of The Riverside Apartment Hotel, together with the personal property located therein which had been distributed to the petitioner in the liquidation of The Riverside Apartment Hotel, Inc. The vendee agreed to take the property subject to the existing mortgages then in the aggregate principal amount due of $427,500, and to pay the balance of $572,500 in cash, $50,000 of which was paid on that date and $522,500 was paid when the deed was delivered on May 1, 1950. In addition to the net price, the purchaser agreed to and did pay a broker's fee in the amount of $24,500. On February 10, 1950, the fair market value of the property received by petitioner in the liquidation of The Riverside Apartment Hotel, Inc., was $1,024,500. Opinion KERN, Judge: *132 The sole question presented in this case is what was the fair market value of an apartment hotel as of February 10, 1950, when it was acquired by petitioner as the result of the liquidation of a corporation wholly owned by him. The respondent has determined that its fair market value was $1,024,500. In making that determination respondent relied heavily upon the fact that there was a practically simultaneous sale of the property by petitioner in an arm's-length transaction for a gross price of that amount. Petitioner contends that we should ignore the price received by him in that sale and should conclude that the fair market value of the property acquired by him was $1,100,000 at the time of its acquisition despite the fact that he had agreed just 8 days before to sell it at a net price to him of $1,000,000 and sold it at that price a few months later. Petitioner contends that the sale was in the nature of a forced sale because it was required by the condition of his health, which was jeopardized by difficulties with his tenants. He argues that a fair market value of $1,100,000 has been proved by the two offers to buy the property made to him in the preceding year (both of which *133 involved third mortgages and the payment of a relatively small amount of cash), the testimony of an expert witness, and his own testimony as to value to the effect that the asking price of an apartment property would be six times its annual gross rentals. In our opinion petitioner's difficulties with his tenants probably motivated to a large extent his decision to sell the property, but it did not impel him to sell it at a price which was less than what he considered to be its fair market value. We do not consider that the contemporaneous arm's-length sale can be ignored. To the contrary, we consider that the price of the property which he received therefrom constitutes a more satisfactory criterion of fair market value than the opinion testimony of petitioner and his expert and the rejected offers made to him in the preceding year. Accordingly, we have concluded that petitioner has failed to prove that respondent's determination herein was erroneous. Decision will be entered for the respondent.